UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DIVONE ANTOINE RICE,

                Plaintiff,

v.

JESSE NELSON et al.,

                Defendants.

_____/

Case No. 1:25-cv-145

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Shortly after initiating this action, Plaintiff paid the filing fees.[1]

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Allen, Mukarurinda, and Sices. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

---

[1] Because Plaintiff paid the applicable filing fees, Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 5) will be dismissed as moot.

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards to Plaintiff's claims against the properly joined Defendants (Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt), the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below. Plaintiff's motion to appoint counsel (ECF No. 2) and motion for preliminary injunction and temporary restraining order (ECF No. 7) will be denied without prejudice.

## Discussion

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility and the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC correctional personnel: Correctional Officers Jesse Nelson, Dustin King, Manietta Russell, Jordan Csernyik, Steven Barber, and Unknown Nutt. (Compl., ECF No. 1, PageID.5, 7–9.) Plaintiff also sues the following ICF correctional and medical personnel: Correctional Officer Unknown Allen, Medical Provider Leonice Mukarurinda, and Doctor Petter Sices. (*Id.*, PageID.5, 9–10.) Plaintiff sues Defendants in their individual and official capacities. (*See id.*, PageID.5.)

In Plaintiff's complaint, he alleges that on May 6, 2024, at IBC, he was exercising on the small yard. (*Id.*, PageID.11.) Plaintiff states that "in no way was [he] being disruptive or acting contrary to policy, rules, or regulations."[2] (*Id.*) Defendant Nelson yelled at Plaintiff, stating: "Hey,

---

[2] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotations from Plaintiff's complaint.

Prisoner Rice-the-Rat we need a shakedown." (*Id.*) Plaintiff immediately complied, and Defendant Nelson conducted a shakedown of Plaintiff's person. (*Id.*) Defendant King was also present, and King called Plaintiff "Rice-the-Rat" "multiple times . . . in an attempt to provoke Plaintiff to anger." (*Id.*) Defendant Nelson then stated: "Hey, Rice-the-Rat, you snitched on King and dropped that [Prison Rape Elimination Act (PREA)] grievance on Gibson . . . we had you assaulted once but they let you return to the yard. We're going to personally beat you [racial slur] and get rid of a rat at the same time." (*Id.*, PageID.11–12 (ellipses in original).) Plaintiff was "afraid of being assaulted by and set up by Defendant Nelson and Defendant King," so he "walked away towards the basketball court." (*Id.*, PageID.12.)

Plaintiff alleges that Defendants Nelson and King "put their fist[s] up as if in a fighting/boxing posture, stating, 'fight b[****]; you wrote grievances; this is what comes with it [racial slur], last chance.'" (*Id.*, PageID.13.) "Plaintiff continued to retreat to avoid the advancing assault and put his fist up in a defensive posture." (*Id.*) Plaintiff contends that "Defendant Russell then sprayed a chemical agent (mace) directly in Plaintiff's face, stating: 'like that rat?'" (*Id.*) "Plaintiff continued to retreat towards the phone in fear." (*Id.*) Thereafter, Defendant Nelson struck Plaintiff "with a flurry of closed fist punches to his face, eyes, cheeks, nose, chin, and jaw causing the Plaintiff to lose consciousness." (*Id.*) Plaintiff regained consciousness, and Defendant Nelson continued to "land[] a multitude of kicks and knees to the Plaintiff['s] face, eyes, nose, cheek, lip, chin, head, and nose." (*Id.*, PageID.14.) Defendants King, Russell, Csernyik, Barber, and Nutt also punched and kicked Plaintiff in the "head, face, and neck area." (*Id.*) Additionally, "the Defendants all stomped, bent, [and] twisted the Plaintiff['s] hand and wrist for the express purpose of breaking, fracturing, and/or causing damage to the Plaintiff['s] hand and wrist." (*Id.*) Plaintiff alleges that the "violent beating . . . last[ed] approx[imately] 20 minutes." (*Id.*, PageID.15.)

Plaintiff was taken to the medical unit at IBC, and he was subsequently transported to the emergency room at an outside hospital. (*See id.*, PageID.15, 16.) "Plaintiff was diagnosed with an array of conditions, including but not limited to the following: a contusion, hematoma of the head, as well as severe swelling, inflammation, and bruising tenderness to [the] right side of [his] head and face." (*Id.*, PageID.17.) Plaintiff was also diagnosed with a "bone displacement fracture of the right wrist and closed non-displacement fracture of the fourth metacarpal bone of the right hand . . . ." (*Id.*) The non-party emergency room doctor "mandated that Plaintiff follow up with [an] orthopedics specialist within 7 days." (*Id.*) Plaintiff "returned to IBC later that night where he was placed on involuntary suicide watch." (*Id.*) A non-party sergeant told Plaintiff that he would be "on constant observation for [his] own protection [because] they tried to kill you earlier . . . ." (*Id.*, PageID.18.) The non-party sergeant also stated: "You opened a whole can of worms with those grievances. It's unlikely they'll stop trying. You're out of here at the first light. This should be a learning lesson to stay away from grievances." (*Id.*)

The next morning, May 7, 2024, Plaintiff was transferred to ICF. (*Id.*) Plaintiff states that he went from level IV at IBC to level V at ICF. (*Id.*) When Plaintiff arrived at ICF, he was placed in segregation where he was locked in his cell for "23–24 hours a day." (*Id.*)

On May 9, 2024, two days after Plaintiff's arrival at ICF, he submitted "sick call kites" because he was experiencing migraines, "unbearable pain in his hand and wrist," and "swelling, stiffness, and numbness of his thumb." (*Id.*, PageID.19.) On May 14, 2024, Plaintiff had a consultation with a non-party orthopedic specialist. (*Id.*) The orthopedic specialist "indicated that Plaintiff['s] hand and wrist had sustained multiple fractures and dislocations, and prescribed/mandated the need for [an] urgent MRI, repeat X-rays, wear[ing] [a] brace, and follow

up[s] with orthopedic." (*Id.*, PageID.19–20.) "Plaintiff was denied [a] timely MRI, repeat X-rays, ice pack[s], and follow-up, as prescribed/mandated" by the orthopedic specialist. (*Id.*, PageID.20.)

Plaintiff alleges that on May 14, 2024, he had an appointment with Defendant Mukarurinda, and Plaintiff informed Mukarurinda "of his extreme pain caused by his severely swollen, dislocated hand/wrist and that Tylenol and Motrin w[ere] completely unsuccessful at relieving his unbearable pain." (*Id.*, PageID.20–21.) Plaintiff claims that Defendant Mukarurinda "refused to prescribe stronger/adequate pain relief, stating: 'You assaulted staff. You will never get ice, pain meds, or offsite treatment. F[***] your health and medical needs . . . .'" (*Id.*, PageID.21.)

On May 17, 2024, Plaintiff alleges that Defendant Allen "approached Plaintiff[']s cell and stated: 'You assaulted staff at IBC and wrote those grievances on my friend. You can't have no [sic] shower.'" (*Id.*, PageID.24.) Subsequently, on June 7, 2024, Defendant Allen tried to throw ice at Plaintiff through Plaintiff's food slot and denied Plaintiff his food tray, stating: "F[***] you. You wrote a grievance on me. You don't have s[***] coming." (*Id.*, PageID.25.) The next day, June 8, 2024, Defendant Allen threw Plaintiff's food on the floor, stating: "Sign off on those grievances." (*Id.*)

Plaintiff had another appointment with Defendant Mukarurinda on June 13, 2024, and Plaintiff reported "severe, unbearable hand/wrist pain, debilitating migraines, and severe chest pain/panic attack-like episodes." (*Id.*, PageID.22.) Plaintiff claims that Defendant Mukarurinda "refused to provide any treatment to relieve/resolve Plaintiff[']s ongoing unresolved pain." (*Id.*) Later that night, "Plaintiff received a sick call kite response stating 'we have evaluated multiple times. We are unable to do anything further until we get the results from your MRI. . . .'" (*Id.*) Subsequently, Plaintiff had an MRI on July 16, 2024, and he had a follow-up appointment on

September 19, 2024. (*Id.*, PageID.23.) Plaintiff claims that Defendants Mukarurinda and Sices "did not follow the treatment prescribed/mandated by" the outside, non-party orthopedic specialist. (*Id.*, PageID.24.)

On June 24, 2024, Plaintiff told Defendant Allen that Plaintiff had "a medical detail special accommodation for an ice pack," and in response, Defendant Allen stated: "F[***] you b[****]. You don't never [sic] have sh[**] coming when I work. You wrote a grievance on me. Sign off or I will write you several tickets and you will stay in segregation." (*Id.*, PageID.25.) That same day, Defendant Allen gave Plaintiff "a food loaf when [Plaintiff] wasn't on food loaf." (*Id.*) At another point on that same day, "Defendant Allen gave Plaintiff his food" and told Plaintiff that he had spit in the food. (*Id.*, PageID.26.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment, Fourth Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution. (*See, e.g.*, *id.*, PageID.5–6, 26.) Plaintiff also avers that Defendants engaged in a civil conspiracy in violation of 42 U.S.C. §§ 1981, 1983, and 1985. (*See id.*, PageID.5–6.) Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (*Id.*, PageID.30–31.)

## II. Misjoinder

### A. Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

6

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent

or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis

under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there
> is more than one party on one or both sides of the action. It is not concerned with
> joinder of claims, which is governed by Rule 18. Therefore, in actions involving
> multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in
> a single action only if plaintiff asserts at least one claim to relief against each of
> them that arises out of the same transaction or occurrence and presents questions of
> law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001),

*quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*,

No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v.*

*Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by

Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or

amended complaint unless one claim against each additional defendant is transactionally related

to the claim against the first defendant and involves a common question of law or fact." *Proctor*,

661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims

arise from the same transaction or occurrence, a court may consider a variety of factors, including,

"the time period during which the alleged acts occurred; whether the acts . . . are related; whether

more than one act . . . is alleged; whether the same supervisors were involved, and whether the

defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose

of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being

filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh

Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the

defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements

of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against
> Defendant 1 should not be joined with unrelated Claim B against Defendant 2.
> Unrelated claims against different defendants belong in different suits, not only to
> prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s]
> but also to ensure that prisoners pay the required filing fees—for the Prison
> Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any
> prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit
> complaining that A defrauded the plaintiff, B defamed him, C punched him, D
> failed to pay a debt, and E infringed his copyright, all in different transactions—
> should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166,

168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the

three strikes provision of PLRA).

   Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and

Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions

and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his

claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to

reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Nelson is the first Defendant named in the action. (*See* Compl., ECF No. 1, PageID.5, 7.)[3] Plaintiff alleges that Defendant Nelson conducted a shakedown of Plaintiff's person at IBC on May 6, 2024, and shortly thereafter, Defendant Nelson, as well as Defendants King, Russell, Csernyik, Barber, and Nutt, were involved in the alleged use of force against Plaintiff. (*See id.*, PageID.11–15.) Plaintiff's allegations against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt are transactionally related; however, as explained below, Plaintiff's allegations against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt, all of whom work at IBC, are transactionally *unrelated* to Plaintiff's allegations against Defendants Allen, Mukarurinda, and Sices, all of whom work at ICF.

Specifically, as to Defendants Allen, Mukarurinda, and Sices, Plaintiff alleges that Defendants Mukarurinda and Sices were involved in providing medical care to Plaintiff at ICF, and Plaintiff alleges that Defendant Allen denied him a shower on one occasion and food on several occasions during Plaintiff's incarceration at ICF. (*See id.*, PageID.20–26.) Plaintiff's claims against the ICF Defendants involve discrete issues related to Plaintiff's medical treatment and conditions of confinement at ICF, which are transactionally unrelated to the alleged use of excessive force by the Defendants at IBC. In an attempt to connect all of the events, Plaintiff claims that at a May 14, 2024, appointment with Defendant Mukarurinda, Mukarurinda "refused to prescribe stronger/adequate pain relief, stating: 'You assaulted staff. You will never get ice, pain meds, or offsite treatment. F[***] your health and medical needs . . . .'" (*Id.*, PageID.21.) Plaintiff also claims that on May 17, 2024, Defendant Allen "approached Plaintiff['s] cell and stated: 'You assaulted staff at IBC and wrote those grievances on my friend. You can't have no [sic] shower.'"

---

[3] The analysis of joinder must start somewhere. By accepting the first-named Defendant and the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

(*Id.*, PageID.24.) As an initial matter, although these statements attributed to Defendants Mukarurinda and Allen appear to be an attempt to connect the events at ICF to the events at IBC, based on the facts alleged by Plaintiff, it is not clear that the assault on staff referenced by Defendants Mukarurinda and Allen is the incident at IBC with Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt. Moreover, even if Defendants Mukarurinda and Allen were referencing the incident at IBC, these statements are insufficient to show that their actions of providing allegedly inadequate medical care and denying Plaintiff a shower at ICF, which are discrete, subsequent events, arise from the same transaction or occurrence as the use of force by the Defendants at IBC. After all, in the prison context, any adverse incident experienced by a prisoner could be claimed to be retaliation for some prior incident; however, such incidents are not necessarily transactionally related.

Therefore, for the reasons set forth above, Plaintiff's claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt are transactionally related. However, Plaintiff's claims against Defendants Allen, Mukarurinda, and Sices involve discrete issues and are transactionally unrelated to the claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt. Accordingly, the Court concludes that Plaintiff's claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt are properly joined, but that Plaintiff has improperly joined Defendants Allen, Mukarurinda, and Sices to this action.

**B.    Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendants Allen, Mukarurinda, and Sices to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined

parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's complaint involves events that occurred in 2024. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Allen,

Mukarurinda, and Sices, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against Defendants Allen, Mukarurinda, and Sices are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Allen, Mukarurinda, and Sices because they are misjoined. The Court will dismiss Plaintiff's claims against Defendants Allen, Mukarurinda, and Sices without prejudice to the institution of new, separate lawsuit(s).[4]

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

---

[4] If Plaintiff wishes to proceed with his claims against Defendants Allen, Mukarurinda, and Sices, he may do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, with respect to Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt, all of whom are properly joined to this suit, Plaintiff raises the following claims against these Defendants in their individual and official capacities: First Amendment retaliation claims, Fourth Amendment claims, Fifth Amendment claims, Eighth Amendment excessive force and failure-to-protect claims, Fourteenth Amendment procedural and substantive due process claims, and civil conspiracy claims under 42 U.S.C. §§ 1981, 1983, and 1985.

### A.    Official Capacity Claims

Plaintiff sues Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt in their official and individual capacities. (Compl., ECF No. 1, PageID.5.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046,

1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (Compl., ECF No. 1, PageID.30–31.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

14

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). And, a court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102.

Further, the United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff's allegations relate solely to past harm, not future risk of harm, and Plaintiff is no longer confined at IBC, which is where he avers that Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt are employed. Thus, Plaintiff cannot maintain his claims for injunctive and declaratory relief against these Defendants.

Accordingly, for the reasons set forth above, Plaintiff has failed to state a claim against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt in their official capacities upon

which relief can be granted, and his official capacity claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt will be dismissed for failure to state a claim.

### B. First Amendment Retaliation Claims

Plaintiff claims that Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt retaliated against him while he was incarcerated at IBC. (*See, e.g.*, Compl., ECF No. 1, PageID.27, 28.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references filing grievances and a PREA grievance. (*See, e.g.*, Compl., ECF No. 1, PageID.11–13.) Plaintiff does not indicate when he filed these grievances; however, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff engaged in protected conduct for purposes of his First Amendment claim.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising

his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

### 1. Shakedown of Plaintiff's Person

Plaintiff alleges that on May 6, 2024, at IBC, Plaintiff was exercising on the small yard. (Compl., ECF No. 1, PageID.11.) Defendant Nelson yelled at Plaintiff, stating: "Hey, Prisoner Rice-the-Rat we need a shakedown." (*Id.*) Plaintiff immediately complied, and Defendant Nelson conducted a shakedown of Plaintiff's person. (*Id.*) Plaintiff alleges that Defendant King was also present, and King called Plaintiff "Rice-the-Rat" "multiple times . . . in an attempt to provoke Plaintiff to anger." (*Id.*) Plaintiff contends that Defendant Nelson then stated: "Hey, Rice-the-Rat, you snitched on King and dropped that [Prison Rape Elimination Act (PREA)] grievance on Gibson . . . we had you assaulted once but they let you return to the yard. We're going to personally beat you [racial slur] and get rid of a rat at the same time." (*Id.*, PageID.11–12 (ellipses in original).) Plaintiff alleges no further facts about the nature of the shakedown. (*See id.*)

The Sixth Circuit has held that "[a] single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 504 (6th Cir. 2011) (citation omitted). However, Plaintiff's allegations suggest that his shakedown was accompanied by verbal threats and a subsequent use of force. Under these circumstances, although Plaintiff has by no means proven his retaliation claims, the Court will not dismiss Plaintiff's First

Amendment retaliation claims against Defendants Nelson and King regarding the shakedown of Plaintiff's person on May 6, 2024.

### 2.    Use of Force

Plaintiff contends that after the shakedown of his person on May 6, 2024, he walked away from Defendants Nelson and King because he was "afraid of being assaulted by and set up by" them. (Compl., ECF No. 1, PageID.12.) Plaintiff alleges that Defendants Nelson and King "put their fist[s] up as if in a fighting/boxing posture, stating, 'fight b[****]; you wrote grievances; this is what comes with it [racial slur], last chance.'" (*Id.*, PageID.13.) "Plaintiff continued to retreat to avoid the advancing assault and put his fist up in a defensive posture." (*Id.*) Plaintiff contends that "Defendant Russell then sprayed a chemical agent (mace) directly in Plaintiff's face, stating: 'like that rat?'" (*Id.*) Thereafter, Defendant Nelson struck Plaintiff, and Plaintiff lost consciousness. (*Id.*) Plaintiff contends that he regained consciousness, and Defendants King, Russell, Csernyik, Barber, and Nutt punched and kicked Plaintiff in the "head, face, and neck area." (*Id.*)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. As to Defendants Nelson, King, and Russell, the Court will not dismiss Plaintiff's First Amendment retaliation claims against them premised on their use of force on May 6, 2024.

However, as to Defendants Csernyik, Barber, and Nutt, although Plaintiff alleges in a conclusory manner that these Defendants acted with a retaliatory motive when they used force against him (*see id.*, PageID.19), Plaintiff fails to allege any facts to support this conclusory assertion. Indeed, Plaintiff alleges no facts to suggest that Defendants Csernyik, Barber, and Nutt knew that Plaintiff had engaged in protected conduct when they used force against him on May 6, 2024. Therefore, Plaintiff's retaliation claims against Defendants Csernyik, Barber, and Nutt fail at the third step because Plaintiff's allegations of retaliatory action by Defendants Csernyik,

18

Barber, and Nutt are entirely conclusory, and Plaintiff merely alleges the ultimate fact of retaliation without providing supporting factual allegations to even suggest that the alleged adverse actions were motivated by the protected conduct. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Accordingly, First Amendment retaliation claims against Defendants Csernyik, Barber, and Nutt premised on their use of force will be dismissed for failure to state a claim.

### 3. Transfer to ICF

Plaintiff alleges that on May 7, 2024, he was transferred from IBC to ICF, and he went from level IV at IBC to level V at ICF. (Compl., ECF No. 1, PageID.8.) With respect to this transfer, Plaintiff alleges: "IBC Defendants all of them by transferring Plaintiff into a higher security level with harsher restrictions for his participation in the prison grievance system . . . violate[d] Plaintiff's First Amendment right[s]." (*Id.*, PageID.28.)

Transfers to the general population of another prison are generally not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the Sixth Circuit held that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action.

Here, although Plaintiff faults all of the IBC Defendants (i.e., Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt) for his transfer to ICF, Plaintiff alleges no *facts* to suggest

that these Defendants were involved in the decision to transfer him to a higher security level at ICF. And, Plaintiff's "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)). Therefore, Plaintiff's First Amendment retaliation claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt premised on Plaintiff's transfer to ICF will be dismissed for failure to state a claim.

### C.   Fourth Amendment Claims

Without providing any further explanation, Plaintiff references the Fourth Amendment in the introduction section of his complaint. (*See* Compl., ECF No. 1, PageID.5.) Liberally construing Plaintiff's complaint, as the Court is required to do at this stage of the proceedings, the Court construes Plaintiff's complaint to raise a Fourth Amendment claim regarding the shakedown of Plaintiff's person, which was performed by Defendant Nelson at IBC on May 6, 2024.

The Fourth Amendment protects against unreasonable searches and seizures of one's person. U.S. Const. amend. IV. Courts recognize that inmates retain a limited expectation of bodily privacy under the Fourth Amendment. *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 n.2 (6th Cir. 2013). However, both the United States Supreme Court and the Sixth Circuit have recognized that, under the Fourth Amendment, prisoners and detainees may be subjected to searches of their person, including strip searches and body-cavity searches, without individualized suspicion. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 333–34 (2012) (rejecting the argument that correctional officials need reasonable suspicion to conduct visual body-cavity searches upon inmates at the time they are admitted to the general jail population); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) (noting that "suspicionless strip searches [are] permissible as a matter of constitutional law"); *see also Salem v. Mich. Dep't of Corr.*, 643

F. App'x 526, 529 (6th Cir. 2016). In determining the reasonableness of a search, "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Stoudemire*, 705 F.3d at 572 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Here, Plaintiff provides no facts about the specific nature of the shakedown of his person. Under these circumstances, Plaintiff fails to show that the shakedown of his person, which was performed by Defendant Nelson on May 6, 2024, was unreasonable. Therefore, Plaintiff fails to state a Fourth Amendment claim regarding this shakedown, and Plaintiff's Fourth Amendment claims will be dismissed for failure to state a claim.

### D.    Fifth Amendment Claims

In the introduction section of the complaint, Plaintiff also references the Fifth Amendment without providing any further explanation. (*See* Compl., ECF No. 1, PageID.5.)

The Fifth Amendment applies only to claims against federal employees. In this action, Plaintiff sues state actors. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### E.    Eighth Amendment Claims

#### 1.    Excessive Force Claims

Plaintiff alleges that Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt used excessive force against him on May 6, 2024. (*See* Compl., ECF No. 1, PageID.13–15.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428

U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury

may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt, each used excessive force against him on May 6, 2024, and Plaintiff provides supporting facts, which are summarized above, to support this assertion. On initial review, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt regarding their use of force on May 6, 2024.

### 2.    Failure-to-Protect Claims

Plaintiff also indicates that he is bringing Eighth Amendment failure-to-protect claims. (*See* Compl., ECF No. 1, PageID.6.) The Court construes Plaintiff's complaint to raise (i) a failure-to-protect claim against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt premised on their failure to stop the May 6, 2024, alleged assault, and (ii) a failure-to-protect claim against Defendants Nelson, King, and Russell premised on them calling Plaintiff a "rat" prior to the alleged assault.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S.

25, 35 (1993). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011). An officer or other prison official is liable for another prison official's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

Here, Plaintiff alleges that Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt used force against him on May 6, 2024, and Plaintiff contends that the "violent beating . . . last[ed] approx[imately] 20 minutes." (Compl., ECF No. 1, PageID.13–15.) Although Plaintiff's failure-to-protect claims regarding this assault lack specificity as to how each Defendant failed to protect Plaintiff, at this time, the Court will not dismiss Plaintiff's failure-to-protect claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt regarding this alleged assault.

However, with respect to Plaintiff's allegations about Defendants Nelson, King, and Russell calling Plaintiff a "rat" prior to the alleged assault on May 6, 2024, as explained below, the Court will dismiss any intended failure-to-protect claims premised on these statements for failure to state a claim. (*See id.*, PageID.11–13.) Specifically, although Plaintiff alleges that Defendants Nelson, King, and Russell called Plaintiff a "rat," Plaintiff does not allege that these statements were heard by anyone else, let alone other inmates. Under these circumstances, Plaintiff

24

fails to state a failure-to-protect claim against Defendants Nelson, King, and Russell premised on them calling Plaintiff a "rat."

### 3.    Verbal Harassment Claims

Finally, the Court construes Plaintiff's complaint to raise an Eighth Amendment claim regarding verbal harassment by Defendants Nelson and King. (*See e.g.*, *id.*, PageID.11–12 (alleging that Defendants Nelson and King used profanity and racial slurs).)

Although unprofessional, allegations of verbal harassment or taunts by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam). Additionally, allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim premised on verbal harassment.

### F.    Fourteenth Amendment Claims

Plaintiff references bringing Fourteenth Amendment claims, however, he does specifically identify the type of Fourteenth Amendment claims that he intends to bring. The Court construes Plaintiff's complaint to raise (i) a procedural due process claim regarding Plaintiff's transfer to a higher security level and (ii) a substantive due process claim regarding the events that occurred at IBC.

### 1.    Procedural Due Process Claim

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

As relevant to Plaintiff's procedural due process claim regarding his transfer to a higher security level, the United States Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976). Moreover, although Plaintiff faults the IBC Defendants (Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt) for his transfer to a higher security level at ICF, Plaintiff fails to allege any *facts* to suggest that these Defendants had any personal involvement in the decision to transfer Plaintiff to ICF, let alone in Plaintiff's placement at a higher security level at ICF. *See, e.g.*, *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008) (discussing that a claimed constitutional violation must be based upon active unconstitutional behavior); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment procedural due process claims will be dismissed for failure to state a claim.

### 2.    Substantive Due Process Claim

To the extent that Plaintiff intended to raise a Fourteenth Amendment substantive due process claim regarding the events that occurred at IBC, as explained below, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman*

*v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of suggesting the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016).

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First Amendment is the applicable constitutional protection for Plaintiff's retaliation claims, and the Eighth Amendment is the applicable constitutional protection for Plaintiff's excessive force claims.

Accordingly, for the foregoing reasons, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### G.    Civil Conspiracy Claims

In the introduction section of Plaintiff's complaint, he references a "civil conspiracy" under 42 U.S.C. §§ 1981, 1983, and 1985; however, the complaint contains no further reference to these claims. (*See* Comp., ECF No. 1, PageID.5–6.)

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for race-based employment discrimination. *See* 42 U.S.C. § 1981. In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that § 1981 does not itself provide a remedy against state actors. *Id.* at 731. Plaintiff's claims are against state actors. And, regardless, Plaintiff fails to allege any *facts* showing that he was involved in the making or enforcing of contracts between public and private actors or that he faced race-based employment discrimination. Plaintiff therefore fails to state a claim under § 1981.

Further, to maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[5] a plaintiff must show the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a

---

[5] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff fails to allege sufficient facts to suggest that Defendants' alleged actions were motivated by Plaintiff's membership in a distinct class. Therefore, Plaintiff's § 1985 claim will be dismissed.

Finally, a civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). And, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff does not specifically allege that any "agreement" or "plan" existed between Defendants. (*See generally* Compl., ECF No. 1.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that each Defendant took allegedly adverse actions against him within a short period of time. However, as the United States Supreme Court has held,

such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Therefore, because Plaintiff does not allege facts to show an agreement among Defendants, and instead, alleges that on discrete occasions, Defendants allegedly took actions against him, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

In summary, for all of the reasons set forth above, Plaintiff's civil conspiracy claims under §§ 1981, 1983, and 1985 will be dismissed for failure to state a claim.

**IV.    Plaintiff's Motion to Appoint Counsel and Motion for Preliminary Injunction and Temporary Restraining Order**

### 1.    Motion to Appoint Counsel

As to Plaintiff's request for the appointment of counsel, indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these

factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 2) therefore will be denied at this time.

> **2.    Motion for Preliminary Injunction and Temporary Restraining Order**

In Plaintiff's motion for preliminary injunction and temporary restraining order, Plaintiff requests that the Court order Defendants to transfer him to "level 4 GP [(general population)]" and to have "no contact with these people until this is over." (ECF No. 7, PageID.103.) As set forth in this opinion, Plaintiff is currently incarcerated at ICF, and the properly joined Defendants are employed at IBC. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive claims. *See supra* Section III.A. Accordingly, Plaintiff's motion for preliminary injunction and temporary restraining order (ECF No. 7) will be denied without prejudice.

<u>Conclusion</u>

For the foregoing reasons, Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 5) will be dismissed as moot. Plaintiff's motion to appoint counsel (ECF No. 2) and motion for preliminary injunction and temporary restraining order (ECF No. 7) will be denied without prejudice.

Further, the Court will drop Defendants Allen, Mukarurinda, and Sices as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against Defendants Allen, Mukarurinda, and Sices without prejudice.

Additionally, having conducted the review required by the PLRA, the Court determines that the following claims against remaining Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c): (i) First Amendment retaliation claims against Defendants Csernyik, Barber, and Nutt

premised on their use of force; (ii) First Amendment retaliation claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt premised on Plaintiff's transfer to ICF; (iii) Fourth Amendment claims; (iv) Fifth Amendment claims; (v) Eighth Amendment failure-to-protect claims against Defendants Nelson, King, and Russell premised on them calling Plaintiff a "rat"; (vi) Eighth Amendment claims premised on verbal harassment; (vii) Fourteenth Amendment procedural and substantive due process claims; (viii) civil conspiracy claims under §§ 1981, 1983, and 1985; and (ix) official capacity claims. The following claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt in their individual capacities remain in the case: (i) First Amendment retaliation claims against Defendants Nelson and King regarding the shakedown of Plaintiff's person on May 6, 2024; (ii) First Amendment retaliation claim against Defendants Nelson, King, and Russell premised on their use of force on May 6, 2024; and (iii) Eighth Amendment excessive force and failure-to-protect claims against Defendants Nelson, King, Russell, Csernyik, Barber, and Nutt regarding the May 6, 2024, assault.

        An order consistent with this opinion will be entered.


Dated:   April 15, 2025                            /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge